MURPHY *v.* STATE.

(*Nashville*, December Term, 1952.)

Opinion filed February 6, 1953.

MADDUX & CAMERON and KEITH BOHANNON, all of Cookeville, for plaintiff in error.

KNOX BIGHAM, Assistant Attorney General, for the State.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

700

 On February 8, 1952, Virgil Murphy was placed under arrest by two highway patrolmen and his automobile searched under the following circumstances:

"The Highway Patrol, two of them stopped the defendant on the public road at or near Baxter Cross Roads, some seven, eight or nine miles west of Cookeville, and they checked his driver's license, which the highway patrolmen had a right to do, and that they then asked him about searching his automobile, and that he, Virgil Murphy, told them he didn't want them to search without a search warrant, probably rather they wouldn't or words to that effect. One of the patrolmen was left there and the defendant and his car left there; the other patrolman came to Cookeville and procured a search warrant, returned to the same point, or near that point, and that the defendant and the other patrolman were still there, and the car was still there, and they made a search of his automobile upon the authority contained in this search warrant.

"Now, there is no insistence that the officers made any search of the car, or saw any evidence of violation of any law by the defendant until they had procured a search warrant and made the search of the automobile. That is, it is not disclosed by the testimony that there was any intoxicating liquor in sight or any evidence of any law violation, that is no packages or boxes of whiskey were in sight, on the outside or inside defendant's automobile that could be seen by the patrolmen before making a search of the automobile, and it is disclosed by the testimony no search was made until they procured a search warrant."

We adopt the foregoing statement of the trial judge as a true and correct finding of the facts. While there is no express finding that Murphy was arrested, we think the facts justify the conclusion that he was taken in custody by the patrolmen, and both he and his automobile held for an hour or more before any search was made of the automobile. It cannot be seriously questioned but that the defendant submitted to the authority of the officer and considered himself and his automobile as being in his custody. From the foregoing undisputed facts we hold that the arrest and seizure of the defendant without a warrant was unlawful.

When the case came on for trial the defendant was convicted of the offense of possessing intoxicating liquor, and his punishment fixed at a fine of $200 and thirty days in the workhouse.

The only assignment of error on this appeal is that the arrest of the defendant was illegal and that the subsequent search of his automobile was likewise illegal, the search warrant not having the effect of legalizing the arrest.

It is settled law that peace officers have the unquestioned right to detain one driving an automobile for the purpose of examining his driver's license. Such a detention is not unlawful where it is done in good faith for that specific purpose. But when it is a mere subterfuge, "or an excuse for a failure to procure a * * * search warrant", it is unlawful. *Cox* v. *State*, 181 Tenn. 344, 347, 348, 181 S. W. (2d) 338, 340, 154 A. L. R. 809. As evidence of the fact that stopping the automobile to examine the driver's license was for an ulterior purpose, we quote the following from Highway Patrolman Dodson's testimony:

"Q. Now Mr. Dodson I believe you stopped this automobile as a result of an official call? A. That's right, called us on the radio.

Q. And who was doing the calling? A. Captain Sanford called and had us stop the car.

"Q. I believe he called and said Virgil Murphy was coming up the highway, *to stop him and see what he had*, that right? A. Yes, sir, that's right."

The testimony of the other officer, Calvin Davis, was substantially the same as that of Dodson. While he made denial that stopping the defendant's car and examination of his license was "a pretext", it is clear from his testimony that it was not the only purpose.

"Q. I asked you if stopping for the purpose of checking his driver's license wasn't a mere pretext in order that you might examine the car for whiskey? A. No, sir, I asked him for the driver's license, *that examination is a part of it.* * * * *and stopped him for the purpose of investigation also.*" (Emphasis supplied.)

While inferentially disclaiming that the defendant was arrested (he did not tell him he was under arrest) he admitted that he *detained him* while his fellow officer went for the search warrant. His exact statement was, "Well, yes sir, might say I detained him. He didn't make any effort to leave or anything."

It is well settled by the law of arrest that it is not necessary to effect an arrest that there be a manual touching of the body or a formal declaration of arrest; it is sufficient if the person arrested understands that he is in the power of the one arresting and submits in consequence. 4 Am. Jur., Sec. 2, pp. 5, 6; *Robertson* v. *State*, 184 Tenn. 277, 284, 198 S. W. (2d) 633. There are

numerous cases holding that "requisite control may be assumed without force, or without any visible physical restraint". 6 C. J. S., Arrest, Sec. 1, p. 571.

We think the learned trial judge was in error in holding that the arrest of the defendant was lawful. We pretermit the assignment of error touching the alleged invalidity of the search warrant. Our conclusion is that, conceding its validity, it did not cure or legalize the unlawful arrest of the defendant.

When Patrolmen Davis and Dodson were directed to stop the defendant and "see what he had", or to make an "investigation", it was their duty to at once procure a search warrant. There was ample time for them to procure this process before the arrival of the defendant.

■ ■ A search warrant is for the protection of the officer and is the basis of his authority. With such a process in hand he has no fear of any civil action for damages against him for any alleged unlawful arrest, even though no whiskey or other contraband be found in the possession of the accused. If, as a result of the search, nothing of an incriminating nature is found the lawful warrant protects him. If contraband is discovered the arrest is then conclusively justified. No officer of the law is required or expected to make an arrest without a warrant where no offense is being committed in his presence. In *Hughes* v. *State*, 145 Tenn. 544, 238 S. W. 588, 20 A. L. R. 639, it is said: "An arrest by an officer without warrant is not justified by the fact that the officer had information leading him to believe that an offense was being committed." 145 Tenn. at page 546, 238 S. W. at page 588.

The foregoing case, as well as similar holdings by this Court, must not be confused with *Thompson* v. *State*, 185

Tenn. 73, 203 S. W. (2d) 361, where the defendant was arrested without a warrant upon the ground that he was committing a felony, or about to commit a felony.

We come now to the question that is sharply in dispute, whether or not the search, made by virtue of a valid search warrant, was lawful where the prior arrest and detention of the defendant was unlawful. It has no precedent in this State. To state it in another way, does the issuance of a valid search warrant, following an unlawful arrest, have the effect of legalizing the arrest and justify the introduction of evidence discovered as a result of the search? We think not.

In 56 C. J., Sec. 70, p. 1184, it is said:

"If a search and seizure is illegal at its inception it cannot become legalized by what it brings to light, rather must it be justified by the steps that precede the search and seizure, which themselves must be lawful in their entirety. Thus, if disclosed as the result of an illegal search, it is not justified by the discovery of contraband, gambling devices, or unlawfully possessed weapons; nor will a subsequent admission or confession of accused legalize a search illegal at its inception."

In support of the foregoing text there appears the following footnotes:

"If seizure is based on mere suspicion and the facts do not justify an arrest, the subsequent discovery by an examination of the evidence secured by the seizure that the suspicion was well founded is not sufficient to make what was unlawful at its commencement a lawful search." *Garske* v. *U. S.*, 8 Cir., 1 F. (2d), 620, 621.

"The doctrine that a search prosecuted in violation of the constitution is made lawful by what it brings

to light has never been recognized by the United States Supreme Court, nor can it be tolerated under our constitutional system.'' *Byars* v. *U. S.*, 273 U. S. 28, 47 S. Ct. 248, 71 L. Ed. 520, rev. 8 Cir., 4 F. (2d) 507. See also 79 C. J. S., Searches and Seizures, Sec. 51.

In *People* v. *Defore,* 242 N. Y. 13, 150 N. E. 585, 586, Mr. Justice Cardozo used the following apt expression: ''Means unlawful in their inception do not become lawful by relation when suspicion ripens into discovery.'' *Tobin* v. *State,* 36 Wyo. 368, 255 P. 788; *People* v. *Jakira,* 118 Misc. 303, 193 N. Y. S. 306; *Jokosh* v. *State,* 181 Wis. 160, 139 N. W. 976; *State* v. *Gibbons,* 118 Wash. 171, 203 P. 390.

In 47 Am. Jur., Sec. 74, p. 550, ''Searches and Seizures'', it is said:

''Where property has been seized unlawfully without a warrant or other justification, the subsequent issuance of a search warrant and retention of the property thereunder do not make the previous search and seizure lawful. A search warrant executed or amended to meet the emergencies of a search and seizure then in progress without sufficient authority, is an evasion of the purpose of the constitutional safeguards.'' 143 A. L. R. 136.

The State insists that we must bear in mind the well-settled rule that one cannot go behind the statements contained on the face of the affidavit in an effort to show the search warrant was improperly issued, relying upon *Bragg* v. *State,* 155 Tenn. 20, 290 S. W. 1; *Reed* v. *State,* 162 Tenn. 643, 39 S. W. (2d) 749; *Gallimore* v. *State,* 173 Tenn. 178, 116 S. W. (2d) 1001; and *Thompson* v. *Carson,* 186 Tenn. 170, 208 S. W. (2d) 1019. In response

to this contention we concede that the warrant was properly issued, but it is not conclusive of the question. It is further argued that proof of the alleged illegality of the arrest is not admissible if the subsequent search was legal. This is contrary to the authorities cited in this opinion.

The courts of this state are ever mindful of the fact that peace officers, who labor day and night against lawless elements, are often at a disadvantage in the suppression of crime. Many escape the toils of the law because of technicalities as well as constitutional inhibitions, and statutes which cannot be made stronger than the constitution itself. Defendant in the case now before us may be a "whiskey runner" in violation of the laws of the State, but he cannot be denied his constitutional rights to protection against unreasonable searches and seizures on that account. While this particular constitutional provision may serve at times to shield criminal transactions which are injurious to society, nevertheless in its broadest application it is recognized as fundamental to the security of all citizens. Thus in *Craven* v. *State*, 148 Tenn. 517, 256 S. W. 431, 432, the late Chief Justice Green, in considering the limitations of the State's right of search and seizure, said:

"We can conceive of no exigency in time of peace that could induce this court to weaken the barriers put up by our fathers to prevent the abuse of this writ. They builded upon a bitter experience.

"At the very foundation of our state is the right of the people to be secure in their persons, houses, papers, and possessions. Infringement of such individual rights cannot be tolerated until we tire of

democracy and are ready for communism or a despotism.''

The assignment of error is sustained. The case is reversed and remanded for further proceedings consistent with this opinion.