Ed Alley, Plaintiff in Error,

*v.*

State of Tennessee, Defendant in Error.

Eugene Stamey, Plaintiff in Error,

*v.*

State of Tennessee, Defendant in Error.

404 S.W.2d 493.

(*Knoxville,* September Term 1965.)

Opinion filed June 8, 1966.

Henry Grady, Chattanooga, for plaintiffs in error.

George F. McCanless, Attorney General, and Thomas E. Fox, Assistant Attorney General, Nashville, for the State. Edward E. Davis, District Attorney General, and Douglas A. Meyer, Assistant District Attorney General, Chattanooga, prosecuted case for State in the trial court.

Mr. Justice White delivered the opinion of the Court.

Since the error assigned in both of these cases is the same, and since the cases were combined for trial, we will consider these appeals in one opinion.

Defendant, Ed Alley, was convicted in the Criminal Court of Hamilton County, of professional gambling, and sentenced to serve ninety days in the Workhouse of Hamilton County, and to pay a fine of $500.00. Defendant, Eugene Stamey, was convicted also of professional gambling, and given a sentence of ninety days in the Workhouse and a fine of $500.00. Defendant Stamey was also convicted of operating a gaming house and possessing gaming devices. For each of these convictions he was fined $100.00 and sentenced to serve ninety days in the Workhouse, the workhouse sentence to run concurrently with the sentence for professional gambling.

The convictions grew out of the following facts: A member of the Sheriff's Patrol of Hamilton County, Captain Nelson, received a notice from the Police Dispatcher that several complaints had been lodged about a disturbance at defendant Stamey's home on the night of April 24, 1965. Captain Nelson, along with another Deputy Sheriff, drove to the Stamey home and observed from the street some motions and heard some sounds coming from the house, which indicated to them that several men there were engaged in a crap game. The front door was open and the windows had no shades, so the actions in the house were easily visible. The house sits off the road about 125 feet. There is some dispute about the time, but it appears that this observation took place somewhere between 8:45 and 9:30 P.M. on April 24, 1965.

These officers left the premises and returned about 10:15 P.M. Meanwhile, they had added some more officers to their ranks, and at this time conducted a raid upon the house. In the interim they had also attempted to

obtain a search warrant, but were advised that they did not need one. Upon their return the door had been closed, and the officers could not hear statements made inside the house, but they could observe through the glass in the windows and in the door that the defendants and their accomplices were making motions that indicated the crap game was still in progress.

Before reaching the house to conduct the raid, one of the officers stopped the Defendant Alley who was running out of the house. Defendant Alley was searched and found to have on his person a .38 caliber revolver, a pair of dice, and $200.00 in cash. Inside the house the officers found one of the defendants, Stamey, together with five other men, milling around the room. They found in the room a table up against the wall with a light blanket on top of it. On top of this blanket was a plywood board leaning slightly against the wall. They also found on the table a set of dice and $1.00 in currency. A search of the premises also revealed a set of poker chips, with a piece of paper written upon which were monetary denominations for the chips. Captain Nelson testifies that the men were searched for money on their persons:

A. John Hanners said he didn't have any money, and I told him to stand up so I could search him, and when he stood up a $5.00 bill fell out of his shirt, it was wadded up, that is all he had, $5.00. Lee Varner had $61.00, John Wilkie had $8.89, Leon Conley had $30.72, Gene Stamey had $44.00, Ralph Porter had $14.00 and John Blalock didn't have any.

Q. What name did he give you first?

A. He gave me Joe Turner, and he told me he went broke in the game.

Q. The defendant John Blalock told you he went broke?

A. Yes, sir.

Q. He had no money on him?

A. That is correct.

Q. This money you testified to on these defendants, where was it found on all of them?

A. Just in their pockets, in the front pockets. We didn't take any money out of any wallet.

The defendants did not testify, but the five other men in the house did testify. They each denied that any gambling was going on or that they saw any gambling taking place. The five men who testified were convicted of simple gaming; they did not appeal their sentences.

The defendants, in their motion for a new trial, listed the following assignments of error and the same are contended for here:

(1) There is no evidence to support the verdict in this cause; (2) the evidence preponderates against the verdict and in favor of the innocence of the defendants; (3) illegal and improper evidence was admitted herein which affected the verdict, such as evidence obtained by an illegal and improper search and in violation of the constitutional rights of the defendants; (4) the verdict was, on its face, the result of caprice and prejudice on the part of the jurors and in no way sustained by the evidence.

We think these assignments of error present essentially two questions: Whether the evidence preponderates against the verdict of the jury in each of these convictions, and whether the search conducted upon the

arrest of the defendants and their accomplices was illegal and, therefore, the evidence gained thereby inadmissible.

There is no conflict in the testimony of the State's witnesses. While some of the officers testified they could hear no sounds and others testified they could hear certain sounds, there is no discrepancy here since at various times during their observations, each officer occupied a different vantage point. The same reasoning supports the testimony of those officers who say they saw different arm motions and those who could see the alleged dice table and those who couldn't.

Defendant Stamey was convicted of professional gambling, a felony under T.C.A. sec. 39-2032, and operating a gaming house and possessing gambling devices for the purpose of enticing persons to gamble, both misdemeanors under T.C.A. secs. 39-2003 and 39-2006.

We think the evidence conclusively preponderates in favor of the verdict of the jury convicting Stamey of operating a gaming house. The State's witnesses, whom the jury chose to believe, testified to hearing sounds and seeing motions, through a door and windows, that could have signified nothing but a crap game. A search of the house also divulged dice, cards, poker chips, and a table set up to accommodate a crap game. The group of men gathered there all had money stuffed in their pockets (pants or shirts), either because it was hurriedly put there, or because it could be handily used for betting, or both. All of this activity was on Stamey's premises. The conclusion is obvious, then, that defendant Stamey was operating a gaming house, within the meaning of T.C.A. sec. 39-2003.

504

■■■ Also, we think the evidence shows that defendant Stamey was possessing gaming devices for the purpose of enticing gaming. Being found in Stamey's house, the conclusion is inescapable that the table with the blanket and plywood and the dice were in his possession. While the mere possession of a gaming device is not, of itself, sufficient to sustain a conviction under this charge, *Cleek v. State,* 189 Tenn. 302, 225 S.W.2d 70 (1949) and *Harris v. State,* 207 Tenn. 538, 341 S.W.2d 576 (1960), nevertheless the arrangement of the table and the dice, together with the motions and sounds witnessed by the officers, would indicate that these objects were being used for gambling. This evidence, we think, determines especially the "true character" of the table-blanket-plywood arrangement. *Van Pelt v. State,* 193 Tenn. 463, 246 S.W.2d 87 (1952).

■ Defendant Stamey was also convicted of professional gambling under T.C.A. sec. 39-2032. The definition of professional gambling, stated in T.C.A. sec. 39-2033 (3) is as follows:

"Professional gambling" means accepting or offering to accept, for profit, money, credits, deposits or other things of value risked in gambling, or any claim thereon or interest therein. Without limiting the generality of this definition, the following shall be included: pool selling and bookmaking; maintaining slot machines, roulette wheels, dice tables, or money or merchandise push cards, punchboards, jars or spindles, in any place; and conducting lotteries, or policy or numbers games, or selling chances therein; and the following shall be presumed to be included: conducting any banking or percentage game played with cards, dice or counters, or accepting any fixed share of the stakes therein.

Interpreting this statute, we think *professional gambling* requires for proof something more than *simple gaming*. We think it may denote, inter alia, an activity wherein the person by whom it is committed takes, backs or risks more than one bet or wager, knowing that even though he takes these extra risks, the odds or chances of winning are in his favor. It usually means, among other things, the type of gambling one does for a living or which consistently augments a person's personal income. It may also mean the operation of premises and the use of devices through which gambling takes place, the operator of the premises and owner of the devices gaining pecuniary profit from the activity in some way.

The evidence against Defendant Stamey on the charge of professional gambling is admittedly circumstantial. There is substantial evidence that gambling was going on at the time or just prior to the time his place was raided. The premises belonged to him, and there were gambling devices on the premises—a table crudely converted into a dice or crap table, the dice, the poker chips with denominations noted in terms of dollars, and money hurriedly stuffed in defendants' pockets. However, these circumstances do not, we believe, exclude the hypothesis that he was participating in the crap game in no different capacity from the other players. We must be careful to disassociate all inferences that are not drawn from the facts as they appear in the record. Under the circumstantial evidence appearing, there is a reasonable possibility that Defendant Stamey was engaged in simple gaming only, and not in professional gambling.

■■ There is some difficulty in reconciling a decision holding Defendant Stamey guilty of keeping a gaming house, under T.C.A. sec. 39-2003, while relieving him of a

conviction of professional gambling. This apparent inconsistency appears because sec. 39-2033(7), which defines a gambling premise, states that a place *is* a gambling premise if it is used for professional gambling. We think, however, that even though all of our gaming statutes, T.C.A. secs. 39-2001—2036 are to be construed in pari materia (*Harris v. State,* supra), the definition of sec. 39-2033(7) is not an *exclusive* definition of a "gaming house" for the purpose of sec. 39-2003.

 Also, we cannot hold Defendant Stamey to a presumption of professional gambling simply because gambling devices were found on the premises—as sec. 39-2033(7) would seem to indicate. This presumption is only for the purpose of determining whether a "gambling premise", within the meaning of T.C.A. sec. 39-2036(4), is being operated. Appearance of gambling devices on the premises is certainly evidence of professional gambling, but as stated previously, it must be combined with other evidence to exclude any other reasonable hypothesis. We therefore reverse the conviction of Defendant Eugene Stamey for professional gambling. The two misdemeanor charges against him are affirmed.

 We also think the evidence preponderates against the conviction of professional gambling for Ed Alley. Alley was apprehended leaving the premises with a pistol, a pair of dice, and $200.00 on his person. It appears that he had done well in the dice game and that he was guilty of simple gaming, but this evidence, while perhaps inferring that he may have been gambling professionally, does not rule out the other possibility that it may have truly been only simple gaming. There is no substantial evidence in the record that Defendant Alley may have so consistently engaged in this activity that it

amounted to a livelihood for him or consistently augmented his income. We must, therefore, reverse his conviction.

Since not even the misdemeanor convictions could stand without the evidence gathered upon the raid, arrest, and search of the house, we must consider the second general assignment of plaintiffs in error: that is, the evidence is the product of an illegal arrest and search.

■ As stated before, the two officers who originally checked out the disturbance, and returned to secure a search warrant, were told that they did not need a warrant. Since the search was properly made as an incident to the arrest, *White v. State,* 210 Tenn. 78, 356 S.W.2d 411 (1962), *Van Pelt v. State,* supra, it must be determined whether the arrest was lawful under the circumstances. An officer may arrest a person without a warrant where any public offense or breach of the peace is threatened or committed in his presence. T.C.A. sec. 40-803(1); *Robertson v. State,* 184 Tenn. 277, 198 S.W.2d 633 (1947).

■ An officer may arrest a person where he has reasonable grounds for believing that a felony has been committed and the person arrested has committed it. T.C.A. sec. 40-803(3); *Dittberner v. State,* 155 Tenn. 102, 291 S.W. 839 (1927); *Fox v. State,* 214 Tenn. 694, 383 S.W.2d 25 (1964).

■ We think the arrest was proper under either or both of these theories. The Sheriff's officers were on the scene in the beginning because of a number of complaints of disorderly conduct. While there, they distinctly heard sounds and saw movements indicating a big dice game was in progress on the premises. This being true, there

was a definite possibility that one of the participants in the game was gambling professionally. At least we think the officers had reason to so believe. When they returned and made the arrest, they did so believing that a felony or misdemeanor had been committed and was even then still being committed in their presence. For these reasons we think the arrest and search were entirely within the law.

The professional gambling convictions of Ed Alley and Eugene Stamey are reversed. All other convictions are affirmed.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.