**Woodrow HOWARD, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

Jan. 3, 1980.

Permission to Appeal Denied by Supreme Court March 10, 1980.

Charles E. Baucum, Edwin C. Lenow, Asst. Public Defenders, Memphis, for appellant.

William M. Leech, Jr., Atty. Gen., Charles L. Lewis, Asst. Atty. Gen., Nashville, James D. Wilson, Phyllis Gardner, Asst. Dist. Attys. Gen., Memphis, for appellee.

## OPINION

DAUGHTREY, Judge.

The appellant-defendant, Woodrow Howard, was convicted of grand larceny and, upon the jury's determination that he was an habitual criminal, he was sentenced to life imprisonment. On appeal Howard challenges (1) the legality of his arrest and the admissibility of his lineup identification the next day by two eyewitnesses to the theft; (2) the admissibility of testimony concerning that pretrial identification, and (3) the sufficiency of the convicting evidence. We find no reversible error in the record.

On August 29, 1977, two employees of the Overlook Apartments in Memphis were working in the office of the apartment complex when a young man entered, gave his name as "John McKinley," and asked about securing a refund on his deposit. Leaving $300.00 and some papers on a desk, one of the women went to check the records. "John McKinley" then reached over, grabbed the money and papers, and ran out the door. As the thief drove away, one of the two women read off the license number of his automobile, and the other wrote it down. They later gave the license number and description of the thief and his car to police.

At a hearing outside the jury's presence, police officers testified that on September 8, 1977, they received a disturbance call at 1011 Oakview Road, resulting in the defendant's arrest on an unrelated charge. The proof showed that Lenola Tolbert, a 16 year old girl who was living at the Oakview address and who was acting as a prostitute for the defendant, called for police assistance. When officers arrived at the scene, she explained that she and Howard had argued, that he had locked her out of the house and had taken her key, and that she now wanted to remove her clothes from the house. The defendant came to the front door when the officers knocked, but refused to let them or the girl in. She told officers this was because there was stolen merchandise in the house taken from a local storage company. At that point, she entered the house by crawling in a side window.

The gist of the officers' testimony was that after the girl went through the window, loud noises emanated from the house, followed by silence. Fearing for her safety, one of the officers crawled in the same window and let the other in the back door. Inside the house they found the young prostitute and some stolen goods. They promptly arrested Howard and took him to police headquarters. When it was discovered the next day that he was a suspect in the larceny from the Overlook Apartments, he was put in a lineup and was identified by the two eyewitnesses to that offense.

Testifying in the jury's absence, the defendant denied that the 16 year old girl was living at 1011 Oakview. He also denied that she paid the rent for the house at that address, as the police testified she had told them. Defense counsel argued that Howard's warrantless arrest was invalid and that the lineup held the next day was tainted by the illegal arrest. However, the trial judge ruled that there was probable cause to arrest the defendant on the unrelated charge and permitted the jury to hear testimony regarding the lineup.

■ Although the defendant now questions Lenola Tolbert's reliability, citing *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), and *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) as controlling "the quantum of evidence necessary to establish probable cause based upon an informant's tip," the record fails to show that an objection on this basis was entered at trial, or that this question was argued by counsel. Nevertheless, a review of the testimony shows that Tolbert's reliability was established by the circumstances of her confrontation with investigating officers and by their brief encounter with the defendant prior to entering the house. At the time, she had recently been inside the house and had reason to know

about the stolen property and how it came to be there. The evidence does not preponderate against the trial court's determination that the police had probable cause to arrest Howard at the time they effected his arrest.

■ The defendant further argues that even if the proof establishes probable cause to believe that there was stolen merchandise in the house, there were no exigent circumstances to permit entry without an arrest warrant. We find no legal merit to this contention. Tennessee law authorizes the warrantless arrest of a suspect "[w]hen a felony has in fact been committed and [the officer] has reasonable cause for believing the person arrested to have committed it." T.C.A. § 40–803(3). In *Garner v. State*, 4 Tenn.Cr.App. 189, 469 S.W.2d 542 (1971), the defendants were arrested at their homes following a statement to police by another suspect that they had been involved in the robbery under investigation. This court upheld the legality of the warrantless arrests and thus validated the ensuing lineup identification. Thus there is no recognized requirement under Tennessee law that the probable cause necessary for a valid warrantless arrest be accompanied by "exigent circumstances." See also *Coolidge v. New Hampshire*, 403 U.S. 443, 511, 91 S.Ct. 2022, 2060, 29 L.Ed.2d 564 (1971).[1]

Even so, we think the record before us suggests the existence of a legitimate emergency, requiring the officers' entry to assist the 16 year old girl.[2] As Chief Justice (then Judge) Burger stated in *Wayne v. United States*:

[A] warrant is not required to break down a door to enter a burning home to rescue occupants or extinguish a fire, to prevent a shooting or to bring emergency aid to an injured person. The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency. 318 F.2d 205, 212 (D.C. Cir. 1963).

See also *People v. Mitchell*, 39 N.Y.2d 173, 383 N.Y.S.2d 246, 347 N.E.2d 607 (1976); *State v. Hetzko*, 283 So.2d 49 (Fla.App. 1973); *Commonwealth v. McKeever*, 229 Pa. Super. 35, 323 A.2d 44 (1974). We conclude that it would have been unreasonable as well as unnecessary for the officers to have left the scene to secure an arrest warrant, given the risk involved to the girl and the other factors in the record which tend to establish the existence of probable cause to believe that the defendant had been involved in the commission of a felony, and further, that another felony (or at the least, a breach of the peace) was about to be committed. As one commentator has noted:

. . . when the occasion for arrest arises while the police are already out in the field investigating the prior or ongoing conduct which is the basis for the arrest, there should be a far greater reluctance to fault the police for not having an arrest warrant. Here, the presumption should be in favor of a warrantless arrest rather than against it, as the probabilities are high that it is not feasible for the police to delay the arrest while one of their number leaves the area, finds a magistrate and obtains a warrant, and then returns with it.

\* \* \* \* \* \*

There is yet another reason, . . . [other than preservation of evidence], why officers in the field must often take immediate action even though the person to be arrested could probably be found later and arrested pursuant to a warrant

---

1. See note 2, *infra*.

2. Thus this case is distinguishable from two New York cases now pending before the United States Supreme Court, in which the court is being asked to rule that officers may not make a warrantless "home entry" arrest, absent exigent circumstances and reasonable cause to believe that the suspect is inside the premises. *Payton v. New York*, No. 78–5420, and *Riddick v. New York*, No. 78–5421, *cert. granted* 439 U.S. 1044, 99 S.Ct. 718, 58 L.Ed.2d 703 (1978). In contrast to the case before us, neither of the New York cases involved exigent circumstances for the warrantless entry, and in *Payton* there was no reasonable cause to believe that the suspect was inside his residence. 26 Cr.L. 4053, 4054–5.

obtained in the meantime. Not infrequently, a prompt entry to arrest is called for in order to minimize the risk that someone will be injured or killed. Sometimes the risk is to another person who is also in the premises to be entered, such as an undercover agent or informant, a possible hostage, or an individual the person to be arrested knows has cooperated with the police.

W. LaFave, *Search and Seizure* § 5.1, pp. 392, 394 (1978). See also T.C.A. § 40–803; *Jones v. State*, 161 Tenn. 370, 33 S.W.2d 59, 60 (1930). Our courts have long recognized the need of officers to "act with promptness in enforcing the law." *Thompson v. State*, 185 Tenn. 73, 203 S.W.2d 361 (1947). This duty is circumscribed only by the requirement that the officer act in good faith,[3] *Eanes v. State*, 6 Humph. 53, 25 Tenn. 53 (1845); *Jones v. State, supra*; and, in the event of an arrest, upon reasonable cause.

■ Moreover, even if the arrest in this case were held to be illegal, we do not think that fact in itself would necessarily bar identification testimony in this case as the "fruit of the poisoned tree." In *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), the United States Supreme Court announced the principles to be applied in determining whether evidence obtained after an illegal arrest should be excluded. There the court said:

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means significantly distinguishable to be purged of the primary taint." 371 U.S. at 488, 83 S.Ct. at 417.

Although the *Wong Sun* court did not set out specific criteria for determining wheth-

er the "taint" has been sufficiently dissipated, in a subsequent case the court recognized three factors which must be considered when it is alleged that a confession has been "obtained by exploitation of an illegal arrest": the "temporal proximity" between the arrest and the evidence; the "presence of intervening circumstances;" and the "purpose and flagrancy of the official misconduct." *Brown v. Illinois*, 422 U.S. 590, 603–4, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975). See also *Johnson v. Louisiana*, 406 U.S. 356, 365, 92 S.Ct. 1620, 1626, 32 L.Ed.2d 152 (1972). In the case before us, the stationhouse lineup was separated from the arrest by a full day, and the identification was made by the victims of a crime wholly unrelated to the charge upon which Howard was being held, an "intervening circumstance" of virtually controlling significance here. Thus the purpose of the challenged arrest was not to produce the defendant's identification in the larceny case, because there is no evidence that at the time of the arrest the officers were aware that Howard was a suspect in the apartment office theft. Nor, as discussed above, can their conduct be described as "flagrant," given the apparent necessity of coming to the aid of Lenola Tolbert, who, wisely or unwisely, rightly or wrongly, was inside the defendant's residence at the time police officers entered it. We thus conclude that any "primary taint" in this case must be considered purged and the identification testimony fully admissible.

Moreover, a growing number of courts have recognized an "inevitable discovery" exception to the taint doctrine. See e. g., *Wayne v. United States, supra*; see generally LaFave, *supra*, at § 11.4. We think identification of the defendant as the thief in this case was virtually inevitable, even if he had not been arrested and taken into custody on the unrelated charge. His description had been given police by two eyewitnesses, along with the license number of the automobile driven by the thief (which,

---

**3.** One of the officers testified that he recalled "boosting" Lenola Tolbert into the house. While this conduct may have been unwise, we cannot say that it is sufficient to make out a case of subterfuge. As discussed below, there was no evidence to show that the officers improperly exploited the defendant's arrest in order to secure the later identification.

it later developed, was registered to the defendant's sister). The conclusion is inescapable that this evidence, obtained independently of the challenged arrest, would have led police to Howard sooner or later. His arrest on another charge merely hastened the inevitable; it does not make the subsequent stationhouse identifications subject to application of the exclusionary rule.

■■■ We hold that the pretrial identification testimony was not rendered inadmissible by the circumstances of the defendant's arrest. Nor was it subject to exclusion as improper "bolstering" of the eyewitnesses' in-court identification of the defendant. See generally D. Paine, *Tennessee Law of Evidence* §§ 88, 220 (1974); see also *Withers v. State*, 523 S.W.2d 364, 370 (Tenn. Cr.App.1975), *Echols v. State*, 517 S.W.2d 18 (Tenn.Cr.App.1974). Given the admissibility of the eyewitness testimony, we find that there is ample evidence in the record from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt. Tennessee Rules of Appellate Procedure, Rule 13(e); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

We therefore affirm the judgment of the trial court.

WALKER, P. J., and TATUM, J., concur.

