Craven v. State.

### OCE CRAVEN *v.* THE STATE.*

*(Jackson.* April Term, 1923.)

CRIMINAL LAW. Searches and seizures. Search warrant based on Sheriff's affidavit on information and belief, without stating information, held void, and evidence obtained inadmissible.

A search warrant based on a sheriff's affidavit, made on information and belief, that probable cause exists to justify the writ, without setting out the character of the information, is void under Constitution, article 1, section 7, providing for security against unreasonable searches and seizures, and evidence procured thereby will not support a conviction for violating the liquor laws.

Cases cited and approved: Elliott v. State, 256 S. W., 431; Entinck v. Carrington, 19 St. Tr., 1030; Hughes v. State, 145 Tenn., 544.

#### FROM LAKE.

Error to the Circuit Court of Lake County.—HON. ROBERT A. ELKINS, Judge.

PIERCE & FRY, for plaintiff in error.

WM. H. SWIGGART, JR., Assistant Attorney-General, for the State.

*The question of constitutional guaranties against unreasonable searches and seizures as applied to search for or seizure of intoxicating liquor is discussed in notes in 3 A. L. R., 1514; 13 A. L. R., 1316 and 27 A. L. R., 709.

On complaint based on information and belief as basis for issuance of warrant or for examination preliminary thereto, see notes in 10 L. R. A. (N. S.), 159 and 25 L. R. A. (N. S.), 60

MR. CHIEF JUSTICE GREEN delivered the opinion of the
Court.

The plaintiff in error was convicted of the violation of
one of our liquor laws and has appealed in error to this
court.

The evidence upon which this conviction rests was pro-
cured through the instrumentality of a search warrant
based upon an affidavit of the sheriff, made on the in-
formation and belief of that officer, that probable cause.
existed to justify the writ.    The character of his infor-
mation was not disclosed.    We reiterate our announce-
ment lately made in *Elliott* v. *State,* 256 S. W. 431, *ante,*
p. 414, that such a warrant is void.

If the magistrate is to issue a search warrant without
being apprised of the reasons leading the sheriff to think
a search should be made, and without weighing these
reasons, then the propriety of a search is always in the
discretion of the police officer, and there is no judicial
discretion involved.    Why require a warrant?    Why not
let the officer make it on his own responsibility, if his bare
opinion as to the necessity for a search justifies process
authorizing it?

The history of our ancestors for three hundred years
has demonstrated that police officers cannot be permitted
to ransack at will the properties of the people.    Intoler-
able conditions have always followed such practices.    A
revolution in England and the revolution of the American
colonies are said by high authorities to have been largely
influenced by promiscuous seizures and searches of the
houses and effects of the people—efforts by the con-
stituted authorities to procure evidence of the violation

Craven    v.    State.

of regulations deemed wise by those in power, but un-
popular with many, and constantly transgressed.

Another storm was rising in England following a re-
newal of such oppression, when Lord Camden delivered
his great judgment in *Entinck* v. *Carrington*, 19 St. Tr., ·
1030, 1067, 95 Eng. Reprint, 807, denying the validity of
a search warrant not issued by a judicial officer after in-
vestigation of the particular case in which the warrant
was sought.  This decision is everywhere alluded to as one
of the landmarks of Anglo-Saxon liberty.  Its principles
have been embodied in the Constitution of the United
States, and of the several States; the language of the Con-
stitution of Tennessee being as follows:

"That the people shall be secure in their persons, houses,
papers and possessions, from unreasonable searches and
seizures; and that general warrants, whereby an officer
may be commanded to search suspected places, without
evidence of the fact committed, or to seize any person or
persons not named, whose offenses are not particularly de-
scribed and supported by evidence, are dangerous to liber-
ty, and ought not to be granted."  Article 1, section 7.

Our statutes prescribe the procedure necessary to be
observed by way of obtaining sanction to search the person
or effects of a citizen, and a search made on less authority
is unreasonable and in contempt of the Constitution.

We can conceive of no exigency in time of peace that
could induce this court to weaken the barriers put up by
our fathers to prevent the abuse of this writ.  They build-
ed upon a bitter experience.

At the very foundation of our State is the right of the
people to be secure in their persons, houses, papers, and
possessions.  Infringement of such individual rights can-

not be tolerated until we tire of democracy and are ready for communism or a despotism. The enforcement of no statute is of sufficient importance to justify indifference to the basic principles of our government. The better class of our ancestors at one time thought there could be no more heinous sin than questioning the divine right and will of the king. Later the majority of them regarded all dealings with the exiled house of Stuart as calling for the most severe methods of repression, and many of a later generation believed that the libels of Wilkes and his associates upon the ministry were so dangerous to good order that they should be suppressed by any means. Likewise there was little general sympathy with the earlier violations of the imposts laws in the colonies.

On these occasions the government proceeded with a heavy hand, and indiscriminate searches and seizures were made in the hunt for evidence upon which to try offenders.

There is little doubt but that at the beginning of each of these crises predominant moral sentiment supported the crown. But violent methods outraged and antagonized the people, and either made impossible or postponed the end sought to be reached. Much turmoil arose, much blood flowed, but little progress was made in law enforcement. The observance of no law has been promoted by tyranny, nor do we suppose ever will be, in an English-speaking country.

These lessons from the past, as well as the Constitution which rules us all, admonish that this court should set itself unfalteringly against any disturbance of the security of the people in "their persons, houses, papers and possessions" by unreasonable searches and seizures.

Search warrants have been considered at length in two recent opinions of this court, *Hughes* v. *State,* 145 Tenn., 544, 238 S. W., 588, 20 A. L. R., 639, and *Hampton* v. *State,* 252 S. W., 1007, *ante,* p. 155, where the authorities are reviewed, and to these cases the profession may refer. Circumstances, however, seemed to demand this further statement of the position of the court in plain and unpretentious form.

Judgment below reversed.