**STATE of Tennessee, Appellee,**

v.

**Ronald HARRIS and Ralph
Gallaty, Appellants.**

Court of Criminal Appeals of Tennessee,
at Knoxville.

June 1, 1995.

R. Jackson Rose, Cumberland Gap, for Appellants.

Charles W. Burson, Attorney General & Reporter, Sharon S. Selby, Assistant Attorney General, Criminal Justice Division, Nashville, C. Berkeley Bell, Jr., District Attorney General, William Rhea, Assistant District Attorney General, Clarksville, for Appellee.

## OPINION

WHITE, Judge.

Appellants, Ronald Harris and Ralph Gallaty, pled guilty to a single charge of manufacturing thirty-four grams of marijuana.[1] Harris received a sentence of eighteen months and a $2,500 fine. Gallaty was sentenced to one year and fined $2,000. Prior to pleading guilty, appellants entered into a plea agreement in which they reserved a certified question of law pursuant to Rule 37(b)(2)(i) of the Tennessee Rules of Criminal Procedure. The issue reserved for appeal is whether the search of appellants' property which yielded the marijuana was valid.

The state has chosen not to respond to the substantive issue but argues only that appellants have not properly reserved an issue that is dispositive of the case. We disagree. Appellants have complied with Rule 37(b) according to the requirements of our Supreme Court in *State v. Preston,* 759 S.W.2d 647 (Tenn.1988).

Rule 37(b) provides that an appeal "lies from any order or judgment ... where the law provides for such appeal, and from any judgment of conviction ... upon a plea of guilty ... if ... defendant entered into a plea agreement under Rule 11(e) but explicit-

---

**1.** Appellants were jointly indicted on six counts. They pled guilty to the first count. The state dismissed the other five which included possession of drug paraphernalia, simple possession, illegal possession of one Temazepam tablet, illegal possession of two Diazepam tablets, and illegal possession of one Pethidine tablet.

ly reserved with the consent of the State and of the court the right to appeal a certified question of law that is dispositive of the case." Tenn.R.Crim.P. 37(b)(2)(i).

In *Preston,* the Supreme Court adopted the following prerequisites to the consideration of the merits of a certified question of law pursuant to Rule 37(b)(2)(i):

1. The final order or judgment must contain a statement of the dispositive question of law reserved by defendant for appellate review;
2. The order must state that the certified question was expressly reserved as part of a plea agreement;
3. The order must state that both the state and the trial judge have consented to the reservation and are of the opinion that the question is dispositive of the case; and
4. The question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved.

*State v. Preston,* 759 S.W.2d 647, 650 (Tenn. 1988). Appellant has the burden to see that the prerequisites are in the final order. *Id.*

The trial judge's amended order unquestionably meets the first three requirements. The state contends only that the statement of the certified question in the final order does not clearly identify the scope and limits of the legal issue being reserved and that the stated issue is not dispositive of the case. The order identifies the certified question of law as: "That is, the validity of the search of the defendant's property where the marijuana was found."

The issue is not framed according to what might be referred to as standard "law-school" format. The wording is not as felicitous as it could be. However, the criteria in *Preston* demands only that the question as stated "clearly identify the scope and limits of the legal issue reserved." The statement in the trial judge's final order unquestionably satisfies these requirements.

In this case, there were two searches. The first was a search of the property behind the residence in which the marijuana plants were found. The officers conducted this search without a warrant and in appellants' absence. The second, the search of the residence, was conducted with the consent of appellant Harris. In this second search, the officers found the drug paraphernalia, a plastic baggie containing a small amount of marijuana, and four pills for which Harris and Gallaty could produce no doctor's prescription. The statement of the certified question of law clearly limits the scope of review to the question of the validity of the first search.

The question as stated is dispositive of the case. The first count of the indictment, to which appellants pled guilty, was based on the evidence seized pursuant to the search behind the residence. If the search was invalid, the state would have no evidence to introduce against appellants. The evidence seized as a result of the consensual residential search are irrelevant since the charges relative to that evidence were dismissed.

The pertinent facts are these. Ronald Harris lives on a secluded piece of fenced property in Hancock County. To reach the Harris home, one must first enter an iron gate which is posted with "no trespassing signs" and then drive approximately a half mile down a private lane. The house, which was built by Harris, has no running water or electricity. Water for household use is carried from a spring located approximately 125 yards behind the house. The land behind the house is mowed regularly. An old hog pen is located about 100 yards away from the house on a lane leading to the spring. The land has been used for livestock and gardening. Ralph Gallaty shares the house and pays a proportionate share of the expenses. Both men are self-employed as mobile home mechanics.

On the afternoon of April 16, 1993, Sheriff Tony Seals and Deputy Carl Lowe arrived at Harris' home to serve civil process on him. At least one car was parked in the driveway and smoke was visible in the chimney. Deputy Lowe knocked on the front door but got no response. He looked inside a sliding glass door on the side of the house and determined that no one was at home. The sheriff, who had remained in the police car, got out and went around the side of the house. He saw no one, but observed some

logs, a tractor, and a loader a distance from the house. At some point, the sheriff observed an enclosure which appeared to be covered with plastic. The sheriff walked down the lane one hundred yards and found an old hog pen with three feet high "tin" sides. According to his testimony, inside the enclosure the sheriff observed small plants growing beneath a torn plastic sheet. After determining that the plants were marijuana, the two officers waited in their car for some five or six hours for Harris and Gallaty to return home.

Neither officer left to obtain a search warrant. When appellants returned home at seven or eight o'clock in the evening, the officers questioned them. Harris admitted it was his pot growing in the hog pen and signed a consent form to search his home and his car.

At the suppression hearing, the police officers, Gallaty and Harris testified. The sheriff and the deputy admitted that the only purpose for being on Harris's property was to serve civil process relating to child support arrears. Both acknowledged that they had no idea that marijuana might be found there.[2] Neither officer maintained that the marijuana plants were visible from the front of the house or the porch. A photograph in the record shows that the house is barely visible from the hog pen and that the plastic cover is approximately level with the surrounding enclosure. The logs and brush are lying beyond and to one side of the hog pen. The lane to the house is clear. The record contains no photograph of the lane and hog pen from the porch or side of the house.

At the conclusion of the hearing, the trial judge sustained the search because he found that the officers were legitimately on the property to serve civil process. He found that the presence of smoke in the chimney and indications of logging gave the officers probable cause to believe that Harris was hiding to avoid service of process. Therefore, the court concluded, it was appropriate to look behind the house and down the lane where the signs of recent logging were observed. Since the hog pen was a place where a person could hide, the judge concluded, the sheriff had probable cause to look in there. Upon looking, the marijuana was in plain view through a hole torn in the plastic.[3] Under these circumstances, the trial judge found that the motion to suppress should be denied.

■ The trial judge in a suppression hearing hears the evidence, determines the credibility of the witnesses, and applies the law to the facts that are found. Consequently, a trial judge's findings of fact are accorded the same weight as a jury verdict, and as in jury cases, these facts are binding upon this court unless the evidence presented at the suppression hearing preponderates against the trial court's findings. *State v. Aucoin*, 756 S.W.2d 705, 710 (Tenn.Crim.App.), *perm. to appeal denied*, (Tenn.1988), *cert. denied*, 489 U.S. 1084, 109 S.Ct. 1541, 103 L.Ed.2d 845 (1989). On appeal, appellant has the burden of showing that the evidence in the record preponderates against the ruling of the trial judge. *State v. West*, 767 S.W.2d 387, 393 (Tenn.1989).

■ The record supports the trial judge's conclusion that the officers were legally on appellants' property to serve civil process. However, the evidence does not support a conclusion that the sheriff believed or had any reason to believe that Harris was hiding either in the woods at the end of the lane or in the hog pen.[4] The sheriff testified that he thought someone might be working in the area where he observed the logs and the enclosure, and that he looked in the pen because he saw the plastic sheet. Little evidence supports the sheriff's conclusion that someone was working on the property. The logs and brush were located beyond the

---

**2.** The deputy was unaware of the hog pen with its plastic cover until the sheriff called out to him.

**3.** Appellants contend that the plastic covering was not torn when they left home that morning. Both maintained that water condensation made it nearly impossible to see through the plastic.

**4.** The sheriff's testimony indicates only that they had some trouble locating Harris and that he accompanied the deputy to show the way to the property.

hog pen. None of the equipment was running. No one was visible. The sheriff did not report hearing any voices or machinery. No effort was made to get the attention of anyone who might be nearby.

Moreover, nothing in the law justifies the sheriff's proceeding down the lane behind a residence for over a hundred yards to serve civil process even if the sheriff had believed that Harris was "hiding" from service. Tennessee Code Annotated Section 8–8–201 provides that

It is a sheriff's duty to:

(1) Execute and return, according to law, the process and orders of the courts of record of this state, and of officers of competent authority with diligence, when delivered to the sheriff for that purpose;

(5)(A) Execute all writs and other process legally issued and directed to the sheriff, within the county, and make due return thereof, either personally or by lawful deputy or, in civil lawsuits only, by lawfully appointed civil process server except in counties [exempted by subdivision (5)(B) ];

(8) Go to the *house or place of abode* of every defendant against whom the sheriff has process, before returning on the same that the defendant is not to be found; ....

Tenn.Code Ann. § 8–8–201 (1993 Repl.) (emphasis added).

Service of process is controlled by Rule 4 of the Tennessee Rules of Civil Procedure. The procedure to be followed if a person evades or attempts to evade service is included in the rule:

### Rule 4.04 Personal Service and Service by Mail

The plaintiff shall furnish the person making the service with such copies of the summons and complaint as are necessary. Service shall be made as follows:

(1) Upon an individual other than an unmarried infant or an incompetent person, by delivering a copy of the summons and of the complaint to him personally, *or if he evades or attempts to evade service,* *by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein,* whose name shall appear on the proof of service, or by delivering the copies to an agent authorized by appointment or by law to receive service on behalf of the individual served.

Tenn.R.Civ.P. 4.04 (emphasis added).

While it is a Class B misdemeanor "to intentionally prevent or obstruct an officer of the state in serving, or attempting to serve or execute, any legal writ or process," Tenn. Code Ann. § 39–16–602(c), (d) (1991 Repl.), nothing establishes that Harris or any one else intentionally prevented or obstructed the sheriff or his deputy from serving the process. In fact, when appellants arrived home, Deputy Lowe successfully completed service.

The Fourth Amendment to the United States Constitution and Article I, Section 7 of the Tennessee Constitution protect a citizen of this state from unreasonable searches and seizures of his dwelling and the curtilage which adjoins the dwelling. *State v. Prier,* 725 S.W.2d 667, 671 (Tenn.1987); *Welch v. State,* 154 Tenn. 60, 289 S.W. 510 (1926). "A warrantless search and seizure is presumed to be illegal, and the state bears the burden of showing that such a seizure is reasonable." *State v. Crabtree,* 655 S.W.2d 173, 179 (Tenn. Crim.App.1983); *see State v. McClanahan,* 806 S.W.2d 219, 220 (Tenn.Crim.App.1991).

The obligation to serve civil process unquestionably gave the officers the right to approach the dwelling and knock on the door. "It cannot be said a person has an expectation of privacy in the area in the front of his residence which leads from the public way to the front door." *State v. Baker,* 625 S.W.2d 724, 727 (Tenn.Crim.App.1981). A sidewalk, pathway or similar passageway leading from a public sidewalk or roadway to the front door of a dwelling represents an implied invitation to the general public to use the walkway for the purpose of pursuing legitimate social or business interests with those who reside within the residence. *State v. Marcus Ellis,* No. 01C01–9001–CR 00021, slip op. at 4, 1990 WL 198876, (Tenn.Crim. App., Nashville, Dec. 12, 1990). Police offi-

cers conducting official police business are considered members of the general public. *See State v. Marcus Ellis,* slip op. at 4. What an officer sees from a vantage point along the walkway between the public road and the front door is not protected by either the Fourth Amendment or the state constitution. *State v. Baker,* 625 S.W.2d at 727.

However, as this court noted in *Ellis,* once an officer has walked around the exterior of a dwelling or attempted to gaze inside a window, the officer violates the mandate of the Fourth Amendment and Article I, Section 7. *State v. Ellis,* slip op. at 4, n. 1. Any substantial and unreasonable departure from an area where the public is impliedly invited "exceed[s] the scope of the implied invitation and intrude[s] upon a constitutionally protected expectation of privacy." *Id.* (quoting *State v. Seagull,* 95 Wash.2d 898, 632 P.2d 44, 47 (Wash.1981) (en banc)).[5]

" 'Except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant.' " *State v. Lakin,* 588 S.W.2d 544, 547 (Tenn.1979) (quoting *Hester v. United States,* 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924)). Tennessee courts have consistently held that police entry upon private, occupied, fenced land without a warrant and absent exigent circumstances is unreasonable and that evidence obtained as a result of such a search must be suppressed. *See State v. Prier,* 725 S.W.2d 667 (Tenn.1987) (marijuana observed from air is admissible, but marijuana within twenty-five feet of the house and discovered during warrantless search is suppressed); *Allison v. State,* 189 Tenn. 67, 222 S.W.2d 366 (1949) (warrantless search invalid where still and illicit whiskey were found a half-mile from defendant's residence in a lot fenced for pasture); *State v. Lakin,* 588 S.W.2d 544 (Tenn.1979) (marijuana found fifty to one hundred feet from a barn was

seized illegally where officers were without a warrant and no one was at home); *State v. McClanahan,* 806 S.W.2d 219 (Tenn.Crim. App.1991) (evidence seized in warrantless search of areas not open to public in a salvage yard is suppressed); *State v. Wert,* 550 S.W.2d 1 (Tenn.Crim.App.), *cert. denied,* (Tenn.1977) (marijuana not visible from public road illegally seized); *State v. Rick Smith,* No. 03C01–9109–CR–00279, 1992 WL 46840 (Tenn.Crim.App., Knoxville, March 12, 1992) (warrantless search of overgrown backyard where defendant raised chickens and fed his dogs was illegal even with probable cause to believe marijuana was being grown on the property.); *State v. Paul Dunham,* No. 01C01–9002–CR–00041, 1990 WL 165796 (Tenn.Crim.App., Nashville, Nov. 1, 1990) (bag of marijuana found on unfenced, but occupied portion of defendant's property was illegally seized).

▮ These officers were authorized to park in the driveway and approach the front door of the house. Had they seen evidence of illegal activity from either the driveway or the front porch, the plain view doctrine may have justified a search. But clearly, the small plants growing in a three foot high enclosure one hundred yards from the back of the house were not visible from the driveway or the front porch. Moreover, even if the plastic covering had been visible from the porch, one could not reasonably conclude that contraband was beneath the frame. In April, a plastic cover would just as likely serve as shelter for seedlings, flowers or vegetables.

Once it was obvious that no one was in the house or on the premises, the officers were at liberty to await the arrival of the residents. Nothing authorized them to peer in windows or prowl around private, occupied, fenced property. Consequently, the warrantless search of appellant's property and the resulting seizure of the marijuana plants

---

5. In *Ellis,* a police officer investigating a murder approached a house from a public road. While standing in the roadway, he could see a vodka bottle, a blonde wig, and a shoe on the porch. He also noticed an area in the yard where a struggle apparently took place. He walked around the house, peered in the windows, and eventually entered the residence through an open door on the side of the house not facing the road.

The court opined that what the officer saw from the public roadway did not constitute a search. *State v. Marcus Ellis,* slip op. at 4, n. 1. However, "[w]hen [the officer] walked around the exterior of the dwelling and shined his light inside each window, he violated the mandate of the Fourth Amendment and Article I, Section 7." *Id.*

was unconstitutional. Any statements made by appellants must likewise be suppressed.

As unfortunate as it may seem to allow those admittedly involved in manufacturing illegal narcotics to avoid punishment, we can do no less if we are to maintain our commitment to the principles of constitutional law. As our state's highest court has noted:

> The courts of this State are ever mindful of the fact that peace officers, who labor day and night against lawless elements, are often at a disadvantage in the suppression of crime.... While this particular constitutional provision may serve at times to shield criminal transactions which are injurious to society, nevertheless in its broadest application it is recognized as fundamental to the security of all citizens. Thus, in *Craven v. State,* 148 Tenn. 517, 256 S.W. 431, 432, the late Chief Justice Green, in considering the limitations of the State's right of search and seizure, said:

> 'We can conceive of no exigency in time of peace that could induce this court to weaken the barriers put up by our fathers to prevent the abuse of this writ. They builded upon a bitter experience.

> 'At the very foundation of our state is the right of the people to be secure in their persons, houses, papers, and possessions. Infringement of such individual rights cannot be tolerated until we tire of democracy and are ready for communism or a despotism.'

*Murphy v. State,* 194 Tenn. 698, 254 S.W.2d 979, 982 (1953).

We have not tired of democracy nor are we willing to weaken those barriers that protect the citizens of Tennessee from arbitrary searches and seizures by law enforcement personnel. The service of civil process does not authorize a warrantless search of private property. The search conducted on Harris's property was unreasonable and in violation of Article I, Section 7 of the Tennessee Constitution. The marijuana plants which were seized as a result of that search and any statements or other fruits resulting from this constitutional infirmity must be suppressed.

The judgment of the trial court is reversed. Since this question is dispositive of the case, the convictions of Ronald Harris and Ralph Gallaty for manufacturing thirty-four grams of marijuana are set aside and the charges against them are dismissed.

SCOTT, P.J., concurs.

HAYES, Judge, dissenting.

I respectfully dissent from the opinion reached by the majority. I would conclude that the issue raised by the appellant in the case is not properly before this court in that it was not properly certified for appeal in accordance with Tenn.R.Crim.P. 37(b)(2). In *State v. Preston,* 759 S.W.2d 647 (Tenn.1988), our supreme court stated:

> Regardless of what has appeared in prior petitions, orders, colloquy in open court or otherwise, the final order or judgment from which the time begins to run to pursue a T.R.A.P. 3 appeal must contain a statement of the dispositive certified question of law reserved by defendant for appellate review and the question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved. For example, where questions of law involve the validity of searches and the admissibility of statements and confessions, etc., the *reasons relied on by defendant in the trial court at the suppression hearing must be identified in the statement of the certified question of law....* Without an explicit statement of the certified question, neither the defendant, the State nor the trial judge can make a meaningful determination of whether the issue sought to be reviewed is dispositive of the case.

*Id.* at 650 (emphasis added). In the present case, the certified question of law, recited in the final order granting this appeal perfunctorily questioned "the validity of the search of the defendant's property where the marijuana was found." This statement of the certified question of law clearly violates the mandates announced in *Preston.* First, the statement is patently non-specific. The certified question does not clearly identify the scope and limits of the legal issue raised. The record raises multiple issues that may or may not be dispositive of the case. These potential issues include the validity of the

civil process in this case, the scope of authority to search incident to execution of civil process, "curtilage", and the "open fields" doctrine. Also, the "reasons relied on" by the appellant in the trial court at the suppression hearing are not identified in the statement. Appellant's motions to suppress offer no assistance in identifying the "reasons relied on" for suppression. Furthermore, appellant's argument at the suppression hearing, which perhaps would have been of benefit in identifying or at least narrowing the grounds relied upon, was omitted from the record. Given this total noncompliance with *Preston,* I would hold that we are unable to reach the merits of appellant's claim and therefore dismiss the appeal. *See State v. Bowlin,* 871 S.W.2d 170, 173 (Tenn.Crim. App.1993); *State v. Ewing,* No. 02C02–9305–CC–00089, 1994 WL 109012 (Tenn.Crim.App. Jackson, March 25, 1994).