# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs December 2, 2008

## STATE OF TENNESSEE v. TOBIAS TOBY HORTON and LATOYA LYNN TOWNSEND

### Direct Appeal from the Circuit Court for Obion County
### No. CC-08-CR22     William B. Acree, Jr., Judge

---

### No. W2008-01170-CCA-R3-CD  - Filed August 13, 2009

---

The Defendant-Appellant, Latoya Lynn Townsend, pleaded guilty to facilitation to distribute cocaine, a Class C felony, and possession of marijuana with intent to deliver, a Class E felony.  For the facilitation offense, she was sentenced to three years at Westate, a community based alternative to imprisonment.  For the marijuana offense, she was sentenced to two years at Westate, to be served concurrently with the sentence imposed for the facilitation offense, and ordered to pay a fine.  The Defendant-Appellant, Tobias Toby Horton, pleaded guilty to possession of cocaine with intent to deliver, a Class B felony, and possession of marijuana with intent to deliver, a Class E felony.  For the cocaine offense, he was sentenced to eight years in the Tennessee Department of Correction, and he was ordered to pay a fine.  For the marijuana offense, he was sentenced to two years in the Tennessee Department of Correction, which was to be served concurrently with the sentence imposed for the cocaine offense and his sentence for a prior probation violation.  Townsend and Horton, as a part of their conditional plea agreements, attempted to reserve certified questions of law under Tennessee Rule of Criminal Procedure 37.  In agreed orders filed contemporaneously with their judgment forms, they each set out the following certified question of law:  whether the search of the residence leased by Townsend was unconstitutional in violation of Article I, section 7, of the Tennessee Constitution and the Fourth Amendment of the United States Constitution.  Because the certified questions fail to identify the scope and limits of the legal issue reserved, we conclude that we are without jurisdiction to consider this appeal and, therefore, it is dismissed.

### Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and J.C. MCLIN, JJ., joined.

Joseph P. Atnip, District Public Defender, for the appellants-defendants, Tobias Toby Horton and Latoya Lynn Townsend.

Robert E. Cooper, Jr., Attorney General and Reporter; Elizabeth T. Ryan, Assistant Attorney General; Thomas A. Thomas, District Attorney General; and James T. Cannon, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

   **I. Background.** Townsend and Horton were indicted for possession of cocaine with intent to deliver within 1000 feet of a school, and possession of marijuana with intent to deliver within 1000 feet of a school. Both were represented by the same defense attorney. On March 14, 2008, the trial court held an evidentiary hearing on their motion to suppress any and all evidence seized as a result of the alleged illegal, invalid, and warrantless search of their apartment on November 12, 2007. In this motion, Townsend and Horton also challenged the validity of the search warrant that preceded the second search. The suppression hearing was continued to April 4, 2008, to allow the State and the defense to research whether the officers had the right to go to the apartment's back door and whether exigent circumstances existed to justify a warrantless search of the apartment.

   The facts in this case are undisputed. Investigator Shawn Palmer of the Union City Police Department received information from an informant that drug activity was occurring at an apartment leased by Townsend and occupied by Horton in Union City. Investigator Palmer knew that the information he had been given regarding Townsend and Horton was not enough to provide probable cause for a search warrant. Investigators Palmer, David Crocker, and Derrick O'Dell went to the apartment to conduct a "knock and talk" inquiry with Townsend and Horton. While Investigators Palmer and Crocker went to the front door of the apartment, Investigator O'Dell went to the back door of the apartment. The officers at the front door knocked several times, but no one answered the door. At the time, they believed that someone was at home because they heard the sound of a television inside the apartment. They knocked a second time and again did not receive a response. When a neighbor told them that Townsend had left the apartment to pick up her children, Investigators Palmer and Crocker radioed Investigator O'Dell, who was at the back door of the apartment, that they were leaving.

   In the interim, Investigator O'Dell walked to the back of the apartment and observed that Townsend's and Horton's back door was left wide open. The landing for the back door was open to the public and could be easily seen from a public playground, which was only a short distance away. As Investigator O'Dell walked toward the open back door, he observed two small bags of marijuana that were on the ground outside the door. Investigator O'Dell informed the other two officers about the open back door and the drugs. Investigator Palmer walked around to the back of the apartment and stated that the scene appeared as if someone had either entered or exited the apartment in a hurry. Meanwhile, Investigator Crocker stayed at the front door of the apartment to prevent someone inside the apartment from escaping in that direction. Based on officers' experience with drug cases, they were concerned that someone was injured or hiding in the apartment, and they yelled out "Police Department" several times but received no response. The officers entered the apartment and observed a set of scales and drug paraphernalia on the coffee table in the living room. During their safety sweep of the apartment, they observed a plastic bag containing a large amount of crack cocaine in plain view in the floor of the living room and a large amount of crack cocaine, a razorblade, and a bag of marijuana in plain view in one of the bedrooms. The officers photographed the drugs and drug paraphernalia and secured the premises. Investigator Palmer returned to the police department where he requested and received a search warrant. The drugs found in plain view in the apartment during the safety sweep provided the probable cause for the search warrant. Upon receipt of the search warrant, Investigator Palmer returned to the apartment

where he and the other officers uncovered additional drug paraphernalia and identifying information for Townsend and Horton.

At the conclusion of the suppression hearing, the trial court denied the motion to suppress and although the court did not enter a written order, it verbally outlined its findings:

> In this case, the Court finds there was no expectation of privacy at the back door of this apartment. This is a fairly – it's a common area back there. There are four apartments which go in and out the back of this apartment building. In addition to that, there is a playground shown in Exhibit 7. There's a swing and so forth over there, which is available for anyone to use. In short, there is no expectation of privacy at the back of this apartment building.
>
> [Defense Counsel], if this had been a private home, I would have dismissed it a long time ago.
>
> The next issue is whether or not there [were] exigent circumstances of probable cause to enter the building. The Court finds there are two factors, that the door was open and that there were drugs found there to lead any reasonable person to go into the building to see if there was anything amiss or any crime had occurred or any problem there.
>
> . . . .
>
> So, in any event, for those reasons, the motion is denied.

On May 16, 2008, Townsend and Horton entered conditional plea agreements. Townsend pleaded guilty to facilitation to distribute cocaine and possession of marijuana with intent to deliver. Horton pleaded guilty to possession of cocaine with intent to deliver and possession of marijuana with intent to deliver. The judgments forms for Townsend and Horton contained the following language in the Special Conditions section:

> Defendant reserves a certified dispositive question of law pursuant to T.R.C.P. 37(b), with the express agreement of both the State and the Court. The said question of law is set forth in an order filed contemporaneously with this judgment and the guilty plea and the terms of that order are expressly incorporated as if set forth verbatim.

On May 16, 2008, defense counsel filed agreed orders listing the certified question for Townsend and Horton. On May 27, 2008, Townsend and Horton filed their notices of appeal.

**II. Analysis.** Townsend and Horton attempted to reserve certified questions of law pursuant to Tennessee Rule of Criminal Procedure 37(b)(2)(A). Townsend's certified question of law is "[w]hether the search of the defendant's residential apartment was unconstitutional in violation of Article I, Section 7, of the Tennessee Constitution and the Fourth Amendment of the United States

Constitution?" Horton's certified question of law is "[w]hether the search of the residence leased by the co-defendant, LaToya Townsend, was unconstitutional in violation of Article I, Section 7, of the Tennessee Constitution and the Fourth Amendment of the United States Constitution?" However, their issue on appeal is the following: "Did exigent circumstances exist so as to allow a warrantless search of the defendants' apartment?" The State argues on appeal that the case should be dismissed and the convictions affirmed because the statement of the certified question of law "fails to articulate, with the specificity that is required by Preston, the scope and limits of the legal issue reserved." We agree.

Tennessee Rule of Criminal Procedure 37(b)(2)(A) allows for an appeal from any order or judgment on a plea of guilty or nolo contendere if the defendant reserves the right to appeal a certified question of law that is dispositive of the case, so long as the following four requirements are met:

(i) the judgment of conviction or other document to which such judgment refers that is filed before the notice of appeal, contains a statement of the certified question of law that the defendant reserved for appellate review;

(ii) the question of law is stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved;

(iii) the judgment or document reflects that the certified question was expressly reserved with the consent of the state and the trial court; and

(iv) the judgment or document reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case[.]

Tenn. R. Crim. P. 37(b)(2)(A). The Tennessee Supreme Court clearly outlined the requirements for reserving a certified question of law in State v. Preston:

Regardless of what has appeared in prior petitions, orders, colloquy in open court or otherwise, the final order or judgment from which the time begins to run to pursue a T.R.A.P. 3 appeal must contain a statement of the dispositive certified question of law reserved by defendant for appellate review and the question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved. For example, where questions of law involve the validity of searches and the admissibility of statements and confessions, etc., the reasons relied upon by defendant in the trial court at the suppression hearing must be identified in the statement of the certified question of law and review by the appellate courts will be limited to those passed upon by the trial judge and stated in the certified question, absent a constitutional requirement otherwise. Without an explicit statement of the certified question, neither the defendant, the State nor the trial judge can make a meaningful determination of whether the issue sought to be reviewed is dispositive of the case. Most of the reported and unreported cases seeking the limited appellate review pursuant to Tenn. R. Crim. P. 37 have been dismissed because the certified question was not dispositive. Also, the order must state that the certified question

-4-

was expressly reserved as part of a plea agreement, that the State and the trial judge consented to the reservation and that the State and the trial judge are of the opinion that the question is dispositive of the case. Of course, the burden is on defendant to see that these prerequisites are in the final order and that the record brought to the appellate courts contains all of the proceedings below that bear upon whether the certified question of law is dispositive and the merits of the question certified. No issue beyond the scope of the certified question will be considered.

759 S.W.2d 647, 650 (Tenn. 1988) (emphasis added). As the Tennessee Supreme Court stressed, "Preston puts the burden of reserving, articulating, and identifying the issue upon the defendant." State v. Pendergrass 937 S.W.2d 834, 838 (Tenn. 1996).

This court has previously required certified questions of law to be narrowly framed. In State v. Nicholas J. Johnson, a similar case, this court concluded that it did not have jurisdiction of the case because the defendant failed to identify the scope and limits of the legal issue reserved within the expansive area of search and seizure law:

In the present case, the issue reserved is "the validity of the search and seizure of the" Appellant. This overly broad question violates the mandates announced in Preston. The question is not only patently non-specific but also does not clearly identify the reasons relied upon by the Appellant at the suppression hearing. Additionally, review of the question as presently framed would potentially require a complete dissertation of the law of search and seizure of which this court is not willing to engage in absent specific boundaries circumscribed by the Appellant. The holding of Preston created a bright-line rule regarding the prerequisites for a Rule 37(b)(2)(i) appeal from which this court may not depart. See generally Preston, 759 S.W.2d at 650; but see State v. Harris, 919 S.W.2d 619, 621 (Tenn. Crim. App. 1995) (issue need not be framed in standard "law school" format; statement satisfies Preston if appellate court can ascertain from the record the scope of the issue presented).

No. M2000-03162-CCA-R3-CD, 2001 WL 1356369, at *2 (Tenn. Crim. App., at Nashville, Nov. 6, 2001) (footnote omitted), perm. to appeal denied (Tenn. Apr. 8, 2002). In State v. Kale J. Sandusky, another similar case, this court concluded that the defendant's certified question was overly broad in light of the narrower issue argued by the defendant in his appellate brief:

The issue reserved in the trial court's judgment is "whether or not the entries by law enforcement into [the Defendant's] home on October 23, 2006 were in violation of constitutional guarantees against unreasonable searches and seizures under the state and federal constitutions. . . ." The Defendant's brief, however, frames the issue as follows: "Must arrest warrants for the offense of 'failure to appear' be issued by a neutral and detached magistrate upon a sworn affidavit setting forth probable cause?"

The Defendant's certified question is overly broad and fails to clearly identify the scope and limits of the legal issue reserved. We point out that the certified question does not mention the validity of an arrest warrant.

No. M2008-00589-CCA-R3-CD, 2009 WL 537526, at *3 (Tenn. Crim. App., at Nashville, Mar. 4, 2009), application for perm. to appeal filed (Tenn. May 1, 2009).

We conclude that the certified questions presented by Townsend and Horton fail to precisely identify the scope and limits of the legal issue reserved. See Tenn. R. Crim. P. 37(b)(2)(A)(ii). Most importantly, the certified questions do not mention whether exigent circumstances justified the warrantless search of the apartment. Additionally, the certified questions do not specify whether the first warrantless search of the apartment or the second search pursuant to the search warrant was allegedly unconstitutional, despite the fact that the trial court's ruling at the suppression hearing was limited to the validity of the first search.

Here, the trial court's ruling at the suppression hearing focused on the exigency exception to the warrant requirement. Regarding these exceptions, the Tennessee Supreme Court stated, "[U]nder both the federal and state constitutions, a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997) (citing Coolidge v. New Hampshire, 403 U.S. 443, 454-55, 91 S. Ct. 2022, 2032 (1971); State v. Bartram, 925 S.W.2d 227, 229-30 (Tenn. 1996)). In McMahan, this court outlined the exceptions to the warrant requirement: "A warrantless search is per se unreasonable, unless it falls into one of the narrowly defined and carefully drawn exceptions to the warrant requirement, i.e., searches incident to a lawful arrest, those made by consent, in the 'hot pursuit' of a fleeing criminal, 'stop and frisk' searches, and those based on probable cause in the presence of exigent circumstances." State v. McMahan, 650 S.W.2d 383, 386 (Tenn. Crim. App. 1983) (citing State v. Shaw, 603 S.W.2d 741, 742 (Tenn. Crim. App. 1980)).

Given the aforementioned law, if probable cause in the presence of exigent circumstances existed in this case, then the officers made a proper warrantless search of Townsend and Horton's apartment, which led to their arrest. Conversely, if probable cause in the presence of exigent circumstances did not exist in this case, then the officers did not have a right to search the apartment, and the fruits of that search should be suppressed. In this case, just as in Nicholas J. Johnson, Townsend and Horton erred by framing their certified questions so broadly that this court would have to conduct a complete overview of search and seizure law in order to answer, which we decline to do. See Nicholas J. Johnson, 2001 WL 1356369, at *2. Additionally, in this case, like Kale J. Sandusky, Townsend and Horton erred because they set out overly broad certified questions but argued a narrow issue, identifying the scope and limits of the legal issue reserved, in their brief on appeal. See Kale J. Sandusky, 2009 WL 537526, at *3. In light of the facts of this case and the trial court's ruling at the suppression hearing, the failure to mention the exigency exception to the warrant requirement in the certified question of law is fatal to this appeal. See Preston, 759 S.W.2d at 650 (concluding "the reasons relied upon by defendant in the trial court at the suppression hearing must be identified in the statement of the certified question of law and review by the appellate courts will

be limited to those [issues] passed upon by the trial judge"). Therefore, we conclude that Townsend and Horton have failed to properly identify the scope and limits of the legal issue reserved, and we are without jurisdiction to consider this appeal. Accordingly, the appeal is dismissed.

## CONCLUSION

Upon review, we conclude that Townsend and Horton have failed to properly identify the scope and limits of the issue reserved in their certified questions of law, and we are without jurisdiction to consider the appeal. Accordingly, the appeal is dismissed.

_____
CAMILLE R. McMULLEN, JUDGE