# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### October 28, 2014 Session

## STATE OF TENNESSEE v. WILLIAM BRYAN GATLIN

**Appeal from the Circuit Court for Marshall County**
**No. 13-CR-92    F. Lee Russell, Judge**

---

**No. M2013-02440-CCA-R3-CD - Filed January 2, 2015**

---

The Defendant, William Bryan Gatlin, was convicted by a Marshall County Circuit Court jury of possession of marijuana with the intent to sell and possession of marijuana with the intent to deliver, Class E felonies, and possession of drug paraphernalia, a Class A misdemeanor. *See* T.C.A. §§ 39-17-417(a)(4) (possession of a controlled substance) (Supp. 2012) (amended 2014), 39-17-425 (possession of drug paraphernalia) (2014). The trial court merged the possession of marijuana convictions. The Defendant was sentenced to serve two years for the merged possession of marijuana conviction and eleven months, twenty-nine days for possession of drug paraphernalia. The sentences were imposed consecutively to each other and to any unexpired sentence. On appeal, the Defendant contends that the trial court erred in denying his motion to suppress evidence obtained during a knock-and-talk encounter and a warrantless entry into his apartment and that the judgments should be reversed because without the illegally obtained evidence, the remaining evidence is insufficient to support his convictions. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROGER A. PAGE, JJ., joined.

Robert H. Plummer III, Franklin, Tennessee, for the appellant, William Bryan Gatlin.

Robert E. Cooper, Jr., Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; Robert Carter, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

The Seventeenth Judicial District Drug Task Force (DTF) received information that the Defendant was involved in distributing hydroponic marijuana and that he lived in an apartment at the rear of a building that also contained businesses. Four officers initiated a knock-and-talk encounter at the door believed to be the Defendant's apartment door. Based upon information they developed during the encounter, they obtained a search warrant for the apartment. The Defendant filed a motion to suppress the evidence obtained during the knock-and-talk encounter and collected as a result of the search warrant, which the trial court denied. The Defendant was later convicted at a trial.

At the suppression hearing, the testimony and photograph exhibits showed that the Defendant's apartment was located in a large, multi-purpose metal building. A convenience store at the front of the building faced Nashville Highway. One side of the building faced Holly Grove Road and contained the entrance to a barber shop, a glass door marked "1405" and displaying a no trespassing sign, and a large garage door. The rear of the building contained a windowless door with a wall-mounted air conditioning or heating unit nearby, a door with a window marked "office," a garage door, another door with a window, and another garage door. The windowless door was identified to the police as the Defendant's apartment door. A public parking lot was located at the front of the building. The area at the side of the building facing Holly Grove Road was paved and adjoined the front parking area at the corner. From the corner of the building between the rear and the Holly Grove Road side, a piece of fence extended for eight feet and contained a "beware of dog" sign. The fence extended in one direction from the corner of the building and did not enclose an area. A gravel path or drive extended from the back corner of the paved area toward the windowless door.

On the evening of December 7, 2012, DTF Assistant Director Agent Tim Miller, DTF Special Agent Shane George, and two other officers went to the building to investigate the information about a person named Bryan selling hydroponic marijuana from his apartment at the rear of the building. Agent Miller testified that he parked at the front of the building and that he saw the no trespassing sign on the door marked 1405 as he walked to the rear to the windowless door about which he had information. He said he had testified incorrectly at the preliminary hearing that he did not see the no trespassing sign. He said that a business truck was parked near the door marked 1405 and that a personal truck registered to the Defendant was parked on the gravel area outside the windowless door.

Agent Miller testified that as the officers approached the windowless door at the rear, they could smell a strong odor of hydroponic marijuana. He said he could tell as he went near the door that the odor was coming from the air conditioner or heater exhaust. He

knocked, and the Defendant opened the door. He said the odor of marijuana was stronger after the door was opened.

Agent Miller testified that he advised the Defendant of his identity and the officers' affiliation with the DTF. The Defendant testified that the officers did not identify themselves but that he knew who the officers were because he saw their badges and attire. Agent Miller said that the Defendant stood in the door's threshold and that he told the Defendant they had information about hydroponic marijuana being sold at the location. He asked if the officers could come inside to talk to the Defendant. The Defendant stated that they could not come inside but that he would come outside. Agent Miller said he told the Defendant not to close the door and advised him that the officers could smell marijuana. He asked again if the officers could come inside to talk. Agent Miller said the Defendant thought about it for a moment and stated he had a "little bit" and would take the officers to it or give it to them. The Defendant testified that although he agreed to give his marijuana to the officers, he never consented to a search. Agent Miller wanted to talk to the Defendant about working with them to provide information about someone more highly placed in the drug network. Agent Miller testified that he told the Defendant not to close the door in order to preserve the evidence and to ensure officer safety.

The Defendant testified that Agent Miller "put his hands on" the Defendant and came inside, but Agents Miller and George testified this did not take place and said they entered pursuant to the Defendant's consent. Agent Miller said they stepped inside with the Defendant and into a wood workshop area. Agent George said Agent Miller told the Defendant that the officers had enough information to apply for a search warrant but that the Defendant could cooperate by talking with them about what he had in the apartment and that the officers would see what they could do for his situation based upon his cooperation. The agents said the Defendant elected to cooperate. Agent Miller said the Defendant took them to an open cabinet in a living area that contained two or three jars of hydroponic marijuana. Agent Miller saw "tally sheets" in plain view, which he said showed the amount of marijuana "fronted out" and the amount of money the Defendant was owed. He said the Defendant also showed them a small set of scales inside a coffee can in the workshop.

Agent Miller testified that he asked the Defendant for consent to search the apartment, that he explained the Defendant did not have to consent, and that the Defendant consented. He said that about five minutes into the search, he heard the Defendant tell Agent George he wanted the officers to get a search warrant. He acknowledged he had been mistaken in his preliminary hearing testimony when he said the Defendant told him, rather than Agent George, to get a search warrant. Agent George testified that during the conversation, he reiterated that the search was being done pursuant to the Defendant's consent and that the Defendant did not have to consent. Agent Miller testified that he confirmed with the

Defendant that the Defendant wanted them to get a warrant and that he told the officers to stop searching. The Defendant was arrested, a warrant was obtained, and the property was searched. During the search, the officers found $1500 in a "movie disk" on top of the cabinet in which the hydroponic marijuana had been stored. In the workshop, they found a red duffel bag inside a cooler with residue and a strong odor of hydroponic marijuana.

Regarding the nature and use of his property, the Defendant testified that the glass door marked 1405 and the no trespassing sign was his front door. He said 1405 was his address's street number. He said the rear of the building where the windowless door was located was not open to the public and that he erected the fence and posted the beware of dog sign to keep out the public. He said he had property stolen from the rear area previously. He said he did mill work and made cabinets and used the wood shop inside his apartment for business purposes but did not have customers in the wood shop due to insurance regulations. He acknowledged that friends sometimes visited his apartment and that they might use the windowless door at the rear of the building. He said a person who worked at the convenience store sometimes came to the back door if he needed the Defendant to help him with something at the store. Regarding the paved area between the side of the building and Holly Grove Road, the Defendant testified that the area was not open to the public. He said the owner of the barber shop had signs posted stating that the lot was for customer parking only and that violators would be towed. He said that the barber shop's owner had a no trespassing sign in front of the shop and that only the shop's customers were welcome. He said he used Bill Robeson's work truck and parked it at the side of the building to have it near a lighted area because it contained a tool box and tools. He said he did work for Mr. Robeson and admitted Mr. Robeson had been to his residence, although he said they were friends in addition to their working relationship. He said he parked his personal truck in the gravel area. The Defendant acknowledged he had five worthless check convictions.

At the trial, Agent Miller, DTF Director Agent Tim Lane, and Tennessee Bureau of Investigation Forensic Chemist Jennifer Sullivan testified. Agent Miller's trial testimony regarding the events of December 7, 2012, was consistent with his testimony at the suppression hearing. He also identified additional items found during the search, which included a marijuana grinder, a wood block and pipe, a pill bottle containing marijuana "roaches," and marijuana cigarette rolling papers. Agent Lane testified that the amount of money found during the search of the Defendant's apartment was $1519 and that the Defendant did not file a petition to challenge the forfeiture of the money. Ms. Sullivan testified that she analyzed green plant material seized during the search. She said it was marijuana and weighed 17.29 grams.

# I

The Defendant contends that the trial court erred in denying his motion to suppress the evidence obtained during the knock-and-talk encounter and the warrantless entry into his apartment. He argues that the police violated his constitutional rights by coming onto his property despite the no trespassing sign on the side door, the fence, and the beware of dog sign at the back corner of the building and that he did not consent to the warrantless entry.

A trial court's findings of fact on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996); *State v. Jones*, 802 S.W.2d 221, 223 (Tenn. Crim. App. 1990). Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. The prevailing party is entitled to the "strongest legitimate view of the evidence and all reasonable and legitimate inferences drawn from that evidence." *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998); *see State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001). A trial court's application of the law to its factual findings is a question of law and is reviewed de novo on appeal. *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997). In reviewing a trial court's ruling on a motion to suppress, this court may consider the trial evidence as well as the evidence presented at the suppression hearing. *See State v. Henning*, 975 S.W.2d 290, 297-99 (Tenn. 1998); *see also State v. Williamson*, 368 S.W.3d 468, 473 (Tenn. 2012).

## A. <u>Knock-and-Talk Encounter</u>

Tennessee courts have recognized the validity of police-citizen encounters in which police officers approach a home and engage the residents as a means of investigating suspected criminal activity. *See State v. Cothran*, 115 S.W.3d 513, 521-22 (Tenn. Crim. App. 2003); *see also State v. Carter*, 160 S.W.3d 526, 533 (Tenn. 2005). A so-called "knock and talk" is permitted despite the absence of probable cause or reasonable suspicion. *Cothran*, 115 S.W.3d at 521; *see State v. Dedrick L. Patton*, No. M2007-02492-CCA-R3-CD, 2009 WL 230287, at *4 (Tenn. Crim. App. Feb. 2, 2009) (recognizing that "[t]he phrase 'knock and talk' appears to have first arrived in the vernacular of this court in *State v. Cothran*"), *perm. app. denied* (Tenn. June 15, 2009). "A person does not have an expectation of privacy in the area in front of his or her residence leading from the public way to the front door." *Carter*, 160 S.W.3d at 533. The public has an implied invitation to use a sidewalk or path from the street to a person's front door for legitimate business or social matters involving a person inside the residence. *Cothran*, 115 S.W.3d at 522 (citing *State v. Harris*, 919 S.W.2d 619, 623 (Tenn. Crim. App. 1995)). The general public includes police officers conducting official business. *Id.* (citing *Harris*, 919 S.W.2d at 623-24).

In the present case, the Defendant argues that the police illegally entered his property by disregarding the no trespassing sign on the door facing Holly Grove Road, by disregarding the fence with the beware of dog sign, and by going to the door at the rear of the building. The evidence shows that the police had information that a person named Bryan was involved in distributing hydroponic marijuana and lived in an apartment at the rear of the building. They parked at the front of the building, walked around the Holly Grove Road side of the building, and went to the door they believed to be the Defendant's apartment door. The trial court found that the building was both commercial and residential, that the officers went to a different location than the no trespassing sign, and that the fence did not enclose the rear area and did not appear to be for the purpose of keeping out visitors. The court found that the door with the no trespassing sign on the Holly Grove Road side of the building and the rear door the agents approached appeared to be for separate residential and commercial tenants. The court noted the lack of evidence that the officers knew of the inside configuration of the property and that the configuration could not be determined by the building's external appearance.

The photographic exhibits support the agents' belief that they went to the equivalent of a front door at the Defendant's apartment. The glass door containing the no trespassing sign and a street number on the side of the builiding facing Holly Grove Road appears to be a commercial entrance and does not appear to be part of the apartment at the rear of the building. The presence of a paved parking area, the work truck near the side door, the large garage door next to the door, and the door's proximity to the barber shop support a conclusion that the units on the side of the building facing Holly Grove Road are commercial in nature. The rear door that the agents approached is different from the other doors depicted in the photographs of the side and the rear of the building because the door is windowless. The presence of the wall-mounted air conditioning or heating unit next to the door also make it appear to be the entrance to residential property, as does the presence of the Defendant's personal truck on the gravel area near the door. Further, the fence does not enclose the area or appear to extend to the end of the property line. While the beware of dog sign might alert a visitor to the presence of a dog, a no trespassing sign was not posted at the rear of the building.

The evidence does not preponderate against the trial court's factual findings, and the findings support the trial court's conclusion that the officers conducted a proper knock-and-talk procedure by taking a direct route to the entrance that appeared to be the Defendant's front door. Neither the no trespassing sign at the side of the building nor the fence with the beware of dog sign effectively communicated that the public was unwelcome on the Defendant's property.

## B.  Warrantless Entry of Apartment

Regarding the warrantless entry into the apartment, the Defendant contends that he did not consent to the officers' entering his apartment.  He also contends that to the extent the record supports a conclusion that he consented, his consent was not voluntary.

The trial court noted the inconsistencies between the testimony of Agent Miller and the Defendant regarding the events that occurred after the agents knocked.  The court credited Agent Miller's testimony.  The court found that the Defendant agreed for the officers to search the premises and that the Defendant voluntarily produced the contraband.  The court also found that the Defendant was not deprived of the ability to make a free and voluntary decision.

The agents' testimony established that Agent Miller told the Defendant they could smell marijuana and that the Defendant agreed to provide the marijuana to the agents.  Agent Miller's testimony also shows that Defendant initially consented to a search of his apartment, although he later revoked the consent to search, and that the agents ceased until they obtained a search warrant.  The trial court credited Agent Miller's testimony over that of the Defendant.

The evidence does not preponderate against the trial court's factual findings.  The findings support a conclusion the Defendant initially consented to a search of his property.  The findings support a conclusion, as well, that the Defendant agreed to provide the contraband to the agents.  No evidence supports a conclusion that the Defendant's consent was not voluntary.  He is not entitled to relief on this basis.

## II

The Defendant contends that without the evidence gathered during the knock and talk and the warrantless entry, there is insufficient evidence to support his convictions.  He does not argue that the evidence admitted at the trial is insufficient to support the convictions.  As we have stated, the trial court properly denied the motion to suppress.  The Defendant is not entitled to relief on this basis.

The judgments of the trial court are affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE